KONA DEVELOPMENT · CO., LIMITED, JAMES B. CASTLE, F. B. McSTOCKER, WEST HAWAII RAILROAD COMPANY AND HAWAIIAN DEVELOPMENT COMPANY, LIMITED, *v.* M. F. SCOTT, NETTIE L. SCOTT; WILLIAM R. CASTLE, TRUSTEE, AND B. F. DILLINGHAM.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED OCTOBER 18, 1909.　　　　DECIDED NOVEMBER 1, 1909.

HARTWELL, C.J., WILDER AND PERRY, JJ.

EQUITY—*injunction to restrain action at law.*

> A bill for an injunction to restrain an action at law, there being no equitable features in the case, does not justify an injunction on the ground that an account is to be taken of such a nature that it "cannot be conveniently and properly justified and settled in an action at law," the bill containing insufficient allegations to sustain a bill for accounting and no prayer for it.

OPINION OF THE COURT BY HARTWELL, C.J.

This is an appeal by plaintiffs from a decree dissolving an injunction issued upon the filing of their bill praying for an injunction to restrain the defendants Scott and wife from proceeding in an action of assumpsit against the Kona Development Co. to recover the sum of $74,194.97, with interest, for breach of a contract between Scott and defendant McStocker for furnishing money to Scott to pay rents and plant 200 acres of land with cane and cultivate the same together with cane he had planted on 300 acres, McStocker to form a corporation "which shall furnish adequate capital, sugar mill and facilities for transporting the said sugar cane, when harvested, and manufacturing the same into sugar," Scott to have all over and above $40,000 of the net proceeds coming from the sugar. The declaration in the action sets out the contract and avers that McStocker, after having furnished Scott with $19,000

used for cultivating the cane, formed the Kona Development Co., to which he sold his interests under the contract, the company assuming his obligations; that advances of money were afterwards made to Scott by the company and also by McStocker, and that by April 30, 1908, Scott had delivered to the company 9774 tons of cane containing 1356.058 tons of sugar, out of which at least 1193.3317 tons of sugar would have been made with an adequate mill although 271.2117 tons less were accounted for, which would have netted $14,972.36; that Scott and his wife expended large sums of money in carrying out the contract; that in April 1908 the plaintiffs sold the standing cane to the company for $64,565.28 in addition to what there was owing for cane already furnished, and that after adding what was due therefrom $74,194.97 is due to the plaintiffs.

From this pleading, which is not in common law form, but in the prolix narrative form peculiar to the code system, it appears the damages laid are for the failure of the defendant to take off the cane at the place agreed upon or to furnish a mill adequate to extract the full amount of sugar available from the cane and for its nonpayment of the agreed price for purchase of standing cane.

The bill, after reciting the contract which is dated July 5, 1905, alleges that McStocker's advances to Scott of $20,000 were made with the assistance of James B. Castle, one of the plaintiffs; that in carrying out the contract McStocker, Castle and their associates formed the plaintiff corporations West Hawaii Railroad Company, Hawaiian Development Company and Kona Development Company to erect and maintain a sugar mill, construct and maintain a railroad to transport cane from the fields to the mill and to act as sugar factors marketing the product of the Kona Development Co. "and to raise and furnish means for carrying on said enterprise in Kona;" that Scott not being able to carry it out his agents, McStocker and

James B. Castle, advanced further sums of money, some of which was expended in accordance with the agreement in cultivating cane and some was diverted to other purposes not contemplated in making the advances, including items for taxes, cash paid to Mrs. Scott, to Cathcart on the order of Scott, interest on the cost of the West Hawaii Railroad extension, land rents, all of which Scott had agreed to pay, he claiming certain charges and credits for wood and seed cane sold, interest, rents, notes of one Hutchins, indorsed by McStocker, amounting to $11,796.44, which Mrs. Scott claimed to be her property although her husband had assigned them to McStocker and James B. Castle as security for advances; that the Kona Development Co. took over McStocker's contract about January 1, 1907, and thereafter the accounts were kept on the books of the company showing advances and charges by the company and its receipts, but the company made no agreement to assume the obligations of the contract other than implied from taking it over; that under the contract Scott delivered cane to the cars of the railroad company which was ground by the Kona Development Co. and marketed by the Hawaiian Development Co., the gross proceeds being credited to Scott and cost of transporting and manufacturing into sugar, bagging, marketing, agents' commission, a net profit of $6 a ton, a pro rata amount of cost of managing the corporations, together with the sum of $20,000 advanced and $20,000 to be paid out of the crop being credited to McStocker and charged to Scott; that the plaintiffs and Scott having got into a dispute in regard to his compliance with the contract for delivery of the cane the Kona Development Co. took possession of and harvested the cane on fields known as Whitmarsh fields and afterwards agreed upon arbitration and award to settle their differences, the agreement being acknowledged before a judge of the circuit court and entered as a rule of court, the agreement enumerating eleven several claims made by the parties;

that the parties had a hearing before Judge Matthewman, A.
W. Carter and George Clark who made an award October
7, 1907, which was filed in the circuit court of the first circuit,
but that Scott moved to set aside the submission on the ground
that it was void in providing for an appeal on points of law
only or bill of exceptions and because the award was not made
in writing and delivered to the parties before August 31, 1907,
as provided in the submission, and while the appeal of the
Kona Development Co. upon the granting of the motion was
pending the plaintiffs entered into negotiations with Scott for
settling matters in dispute resulting in an agreement June 6,
1908, between Mr. and Mrs. Scott of the first part, the Kona
Development Co., James B. Castle and McStocker of the sec-
ond part, the railroad company and Hawaiian Development
Co. of the third part, and the defendant William R. Castle,
trustee, of the fourth part, whereby Scott sold to the Kona
Development Co. his interest in the cane and certain leaseholds
for $78,000, the sum to be reduced according as the area of
cane should be found to be less than 500 acres and to be in-
creased by $15,000 to cover the Hutchins' notes, Mrs. Scott to
release her interest in them and convey the Norton land for
$50 an acre to James B. Castle, the Kona Development Co.
to release to Scott and his wife a certain mortgage, the plain-
tiffs to execute notes for $93,000, payable, as therein provided,
in part to Scott and in part to his wife in one, two and three
years from date, the notes to be deposited with W. R. Castle,
trustee, in satisfaction of any claim which might be found
due from any of the plaintiffs to the Scotts and to be held and
disposed of by the trustee in accordance with the agreement;
that if full settlement between the Kona Development Co.,
James B. Castle, McStocker and the Scotts should not be agreed
upon in three months then arbitration might be agreed upon,
or upon failure to agree upon it Scott "could bring such suit or
suits, action or actions as he deemed advisable to settle and

determine the amounts so in dispute, and upon a final adjustment by the arbitrators and court in any such suit, submission or action the trustee to dispose of the notes remaining in his hands as before provided and thereby terminate the trust;" that the notes were executed, indorsed and deposited with W. R. Castle, 'trustee, the parties agreeing that the accounts be made to April 30, 1908; that upon a survey of the cane fields the acreage was found to be 413.88 acres instead of 500 acres, reducing the purchase price to $64,564.25, whereupon the plaintiffs and Scott wrote to W. R. Castle, trustee, claiming the pro rata deficiency and requesting him to cancel and return notes to that amount or credit any difference between notes returned and that amount upon remaining notes, also notifying him that a statement of the amount claimed to be due, $76,-361.72, from Scott to the plaintiffs, had been delivered to Scott leaving a credit for notes amounting to $3203.56, which request the trustee complied with; that the plaintiffs had done all things required in their agreement, dismissed their appeal from the order setting aside the submission and award, and have made numerous attempts to have the accounts agreed upon, offering to arbitrate them, but that in violation of the agreement the action at law above mentioned has been brought; that the account due to the Kona Development Co., McStocker and James B. Castle, instead of being $76,361.82, according to the account rendered, is $77,139.99, because of the omission of certain items overlooked at the time of the rendition of the account; that May 12, 1908, the defendant Dillingham brought an action against Scott, summoning the Kona Development Co. as garnishee, in which action judgment was rendered October 28, 1908, for Dillingham for the sum of $1620.72 and costs; that Scott has brought a writ of error upon the judgment "which has been sustained by the supreme court;" that the plaintiffs are entitled to have the account settled, their account of $77,139.99 allowed and the notes given to the trustee re-

leased, or if the account is not allowed or the parties are unable to agree upon it or have it referred to arbitrators, that in equity and justice Scott should be "enjoined and directed to forthwith bring his bill of complaint by cross-bill in this action, making all parties hereto parties to said cross-bill to settle the said accounts in order that the same may be determined and that the said trust may be terminated and the said defendant, William R. Castle, trustee, discharged as such trustee," and that Scott and his wife should be perpetually enjoined from maintaining the action concerning the matters and things settled and adjusted by the agreement of June 8, 1908, on the ground that it is oppressive and vexatious, they having adjusted and settled their accounts with the plaintiffs by the notes delivered to Castle, trustee, and having in said agreement provided for an action in equity and settled the amount due if not fixed by agreement or arbitration, and because the Kona Development Co. will be put to great expense and annoyance in defending the action, which defense would be unnecessary and useless since equity must be resorted to to enjoin the enforcement of any judgment against it; that it is advised that it cannot safely rely on setting up as a defense in the action the "matters and things herein set forth, which are a full and complete equitable defense," and further that the other plaintiffs are entitled to be heard in settling the account but are not parties and can make no defense in the action, and on the further ground that the accounts are of a complicated nature involving numerous items. The foregoing statement does not include allegations as to Scott's undertaking to revoke an irrevocable power of attorney to Conant and the subsequent acts of the attorney.

Mr. and Mrs. Scott demurred to the bill for want of equity or showing to warrant equity in interfering with the execution of the trust, because plaintiffs have not done equity in taking the Whitmarsh fields and harvesting the crop thereon, that

Scott is entitled under the agreement to bring the action, that matters of equitable defenses in the action had been settled by agreement; misjoinder of plaintiffs as James B. Castle, Mc-Stocker, the railroad company and Kona Development Co. have no claim for relief against Scott or his wife or to any equitable defense to the action; misjoinder of defendants W. R. Castle and Dillingham as they are doing or threatening to do nothing adverse to any of the plaintiffs and have no claim against any of them. Before hearing on their demurrers the demurrants moved that the injunction be dissolved for want of equity, which motion was granted.

Neither the declaration in the action nor the bill in equity presents any question which requires to be passed upon by a court of equity or which is not cognizable in a court of law. The plaintiffs' claim to be entitled to an injunction on the ground that the action is in violation of the agreement to arbitrate of June 6, 1908, requires that the right reserved to bring an action in three months, if no settlement were reached by arbitration or otherwise, be restricted to a suit in equity. But the agreement reserves the right to bring any action or actions, suit or suits and leaves Scott at liberty to select whatever remedy is appropriate whether in law or equity.

We see no inadequacy of the legal remedy in consequence of its requiring a money judgment while notes are deposited with a trustee to satisfy such judgment if any is made, for it is to be presumed that they would be applied in payment of the judgment precluding an issue of execution. There is no trust which is shown to require regulation or enforcement or the violation of which is apprehended. A case is not shown "in which there are more than two parties having distinct rights or interests which cannot be justly and definitely decided and adjusted in one action at the common law" (Sec. 1834 R. L.), since in order to ascertain whether the Kona Development Co., the defendant in the action, is indebted as

claimed therein no distinct rights or interests are involved other than those of the parties to the action, and there are none which cannot be justly decided and adjusted in the action. Dillingham's claim on his judgment does not require him to be a party defendant.

The only reason why equity would be preferable is that the account may be of such nature "that it cannot be conveniently and properly adjusted and settled in an action at law." Sec. 1834 R. L. As jurisdiction at law in matters of accounts is concurrent, however, with that of equity when there is no equitable feature or equitable relief required, the authority to enjoin the action rests upon the question whether it appears that the accounts cannot be conveniently and properly passed upon in the action.

In *Kawananakoa* v. *Puahi*, 14 Haw. 72, an action by an agent against its principal to recover agent's commissions was enjoined, but the bill showed fiduciary relations between defendant and plaintiff upon which ground the court held "the jurisdiction can clearly be supported," there appearing to have been no discussion of the question of enjoining the action and the attention of the court being directed mainly to whether equity had jurisdiction of a suit for accounting.

The question whether the accounts in this case are too complicated for a jury trial does not appear to be controlled by any former decision and can hardly be dealt with by any general rule to be applied under all circumstances.

"It is not every count which will entitle a Court of equity to interfere: it must be such an account as cannot possibly be taken justly and fairly in a Court of law." *Freitas* v. *Dos Santos,* 1 Y. & J., Ex. 576.

In *King* v. *Rossett*, 2 Y & J. Ex. 32, an injunction was sought against an action on accounts, but the court said that equity will not interfere unless "by showing an account which cannot fairly be investigated by a Court of Law. Unless Courts of Equity were to put that limit to their interference, no case

of this description would ever be tried in a Court of Law, and wherever a person was entitled to a set-off, a bill might be sustained." In *North-Eastern Ry. Co.* v. *Martin,* 2 Ph. 757, an injunction to restrain an action for the balance of an account on the ground that it was "too complicated to be examined with necessary accuracy in a court of law," was denied, the court saying:

"The jurisdiction in matters of account is not exercised, as it is in many other cases, to prevent injustice which would arise from the exercise of a purely legal right, or to enforce justice in cases in which courts of law cannot afford it; but the jurisdiction is concurrent with that of the courts of law, and is adopted because, in certain cases, it has better means of ascertaining the rights of parties. It is, therefore, impossible with precision to lay down rules or establish definitions as to the cases in which it may be proper for this court to exercise this jurisdiction. The infinitely varied transactions of mankind would be found continually to baffle such rules, and to escape from such definitions. It is therefore, necessary for this court to reserve to itself a large discretion, in the exercise of which due regard must be had, not only to the nature of the case, but to the conduct of the parties."

On the other hand, in *Fenno* v. *Primrose,* 116 Fed. 49, it was held that equity should enjoin if the account is such that "the most that a jury could award would be a lump sum, derived from general impressions remaining as the consequence of a trial covering" a long period of time "and involving a great multitude of items of all kinds."

In this case it is to be observed that it is not only accounts which are to be settled, but the adequacy of the mill for taking off the crop involves ascertainment by evidence of facts peculiarly appropriate for a jury to find, upon which facts important legal rights of the parties depend. Moreover, "Actions for accounting are within the concurrent jurisdiction of law and equity and the one first taking actual cognizance of any particular controversy ordinarily retains exclusive jurisdiction." *Kaleikini* v. *Waterhouse,* 19 Haw. 359, 361.

But in view of the difficulty of saying whether the action involves the taking of accounts too intricate for a jury to pass upon we prefer to regard the injunction as properly dissolved on the ground that the bill does not contain averments requisite to sustain a bill for an accounting. It does not even pray for an accounting, nor does it allege that on a taking of an account it would appear that a balance would be found to be owing by the defendants to the plaintiffs and that the plaintiffs are ready and willing to pay whatever balance, if any, should be found upon the accounting to be owing by them to defendants.

Decree affirmed.

*A. L. Castle* (*Castle & Withington* and *Kinney, Ballou, Prosser & Anderson* on the brief) for plaintiffs.

*F. W. Milverton* (*J. W. Cathcart* with him on the brief) for Mr. and Mrs. Scott.