158 P.3d 293

**Violet Yuen Shim DUDOIT, Trustee, Plaintiff–Appellant,**

v.

**Frank CLIFTON and Marina Clifton, Defendants–Appellees.**

**No. 27933.**

Intermediate Court of Appeals of Hawai'i.

Dec. 15, 2006.

Certiorari Rejected Feb. 16, 2007

Roger C. Lerud, on the briefs, Honolulu, for Plaintiff–Appellant.

BURNS, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant Violet Yuen Shim Dudoit (Dudoit) is the trustee of a Trust Agreement dated November 15, 1983. The trust owns land court property at 1338 Wanaka Street, Honolulu, Hawai'i. Trustee Dudoit appeals from the "Final Judgment Pursuant to HRCP [Hawai'i Rules of Civil Procedure] Rule 58" (Final Judgment) filed on April 28, 2006 in the Circuit Court of the First Circuit.[1] We affirm.

## BACKGROUND

Defendants–Appellees Frank Clifton and Marina Clifton (the Cliftons) own land court property at 1344 Wanaka Street, Honolulu, Hawai'i. On March 9, 2005, Trustee Dudoit filed a "Complaint for Trespass and Ejectment" (Complaint) alleging that moss rock walls, tile walls, and a deck owned by the Cliftons were trespassing and encroaching on Trustee Dudoit's property.

On September 19, 2005, the Cliftons filed a motion to dismiss the Complaint (Motion to Dismiss). Trustee Dudoit's November 3, 2005 pretrial statement states in part:

> Many years ago, two owners of adjoining residential lots agreed to build a common wall with one owner, Mr. [Stanley] Bicoy, actually constructing the wall and the other owner not participating in any way with the construction of the wall.
>
> The walls constructed by Mr. Bicoy were far more than common walls in that some were over 14 feet high and actually used as retaining walls for the benefit of the Bicoy house.
>
> . . . .
>
> The facts will show that the prior owner of the Clifton property, Mr. Bicoy, built

---

1. The Honorable Bert I. Ayabe presided.

walls which encroached onto the property now owned by [Trustee Dudoit].

The property is Land Court property and there is nothing on the Transfer Certificate of Title that authorized the Cliftons to continue to maintain these encroaching walls on the Dudoit property.

. . . .

The prior owner of the Dudoit property, Larry Debebar, will testify that the walls were entirely constructed by Mr. Bicoy, prior owner of the Clifton property, and that he did not object to their construction, however, Debebar will testify that to his knowledge, there were no building permits obtained and there was no written agreement signed by the parties and recorded on the Transfer Certificate of Title.

[Trustee Dudoit] will rely on the case of *Honolulu Memorial Park v. City and County of Honolulu*, 50 Haw. 189, 436 P.2d 207 (1967) which issued an order of ejectment against the City and County of Honolulu to remove a sewer constructed under Honolulu Memorial Park without any authorization to do so noted on the Transfer Certificate of Title.

[Trustee Dudoit] will also rely on *Waikiki Malia Hotel v. Kinkai Properties, Ltd.*, 75 Haw. 370, 862 P.2d 1048 (1993) for the proposition that agreements by prior owners which are not recorded on the Transfer Certificate of Title are not enforceable against subsequent purchasers. Accordingly, the Cliftons have no right to maintain the encroachment on the Dudoit property.

On January 23, 2006, Trustee Dudoit filed a motion for partial summary judgment. As an exhibit to this motion, Trustee Dudoit filed the deposition of Larry B. Debebar, the person who sold 1338 Wanaka Street to Trustee Dudoit. At the deposition, Mr. Debebar states, in relevant part:

Q. [BY COUNSEL FOR TRUSTEE DUDOIT] And about what year did you first move into 1338 Wanaka?

A. About 1964, something like that.

Q. Okay. And at some point in time did you sell that house?

A. I sold that house, right.

Q. Do you remember when you sold the house?

A. Oh, about 34 years ago.

Q. To whom did you sell the house?

A. I sold the house to Mr. and Mrs. Dudoit.

Q. And did you have a neighbor? . . .

A. On the right side was the Bicoys. . . .

Q. During the time that you were living at 1338 Wanaka Street did there come a time when you decided to build some walls?

A. Well, Bicoy wanted to make the wall, and suggested to me, "let's make a wall down there." It sounded like a good idea at the time. I said, okay sure. I said okay.

. . . .

Q. Do you remember specifically what Mr. Bicoy said to you regarding the wall?

A. He said "oh, let's put this wall and halfway would be yours, half would be mine." That's what he said.

I said, I agreed on that. . . . Just was a verbal agreement. He said, make this wall, and let's have a common boundary, part of it would be yours, part of it would be mine. That's all I agreed on.

. . . .

Q. What happened then after this agreement?

A. Well, they made the wall. That was it.

. . . .

Q. Were there any other walls, other than that wall on the Bicoy's [sic] boundary line that were to be built?

A. Not that I knew of. But just was a common boundary, that is what I agreed on.

. . . .

A. . . . I called Dionne [2] and said "I made a mistake on that first Affidavit of Truth."

2. The person referred to as "Dionne" is presumed to be Dion Lee K. Gantz, the Bicoys' real estate agent and grandchild.

Q. What did Dionne say to you?

A. And she said "what was the mistake?" I told 'em I didn't disclose everything to [Dudoit], which was the truth, because I didn't even meet [Mr. and Mrs. Dudoit]. So I says [sic] I disclosed it to the real estate man. That is what I told her.

(Footnote added.)

On February 7, 2006, after a hearing on December 14, 2005, the court filed an "Order Regarding Motion to Dismiss Filed September 19, 2005" which states in part:

For good cause shown on the record, it appears that the prior owners had entered into a party wall agreement and there is no question of material fact that the prior owner who built the moss rock wall intended it to be a common wall. Therefore, it is not an encroachment on [Trustee Dudoit's] property. The affidavits submitted by the prior owners indicate the cost of the moss rock wall was shared between the parties and it was intended to be a common wall. There is also an affidavit from [Trustee Dudoit's] predecessor owner which indicates [Dudoit] was notified of the fact that it was a common wall. Therefore, [t]he motion is granted as to the moss rock wall. With regards to the tile wall, there are material questions of fact as to whether it was a party wall. Therefore, the motion is denied without prejudice as to the tile wall. However, in speaking with the parties, the Cliftons are agreeable to removing that wall by the end of 2005 and if they build another wall, it will be on their side of the property.

On March 17, 2006, after a hearing on February 16, 2006, the court entered an order denying Trustee Dudoit's motion for partial summary judgment. This order states in part:

The motion . . . addresses essentially the same issues as [the Cliftons'] Motion to Dismiss which was granted, in part, by the court. The court denies this motion as [Trustee Dudoit] failed to present evidence that could have and should have been brought in the underlying motion to dismiss. The court previously ruled that the moss rock wall was intended to be a common wall and therefore, it is not an en-

croachment on [Trustee Dudoit's] property. The moss rock wall was financed by the predecessor owners of the respective properties and was intended to be built on the property line as a common boundary between the properties.

With respect to the tile wall, it is the court[']s understanding that the tile wall has been removed by [the Cliftons] and therefore, is no longer an issue in this matter.

After a hearing on March 22, 2006, the court entered the Final Judgment based upon the February 7, and March 17, 2006 orders. The Final Judgment states in part:

4. All claims and all issues by all of the parties have been resolved and there are no matters remaining.

5. This judgment is entered pursuant to Rule 58 of the Hawaii Rules of Civil Procedure in favor of [the Cliftons] and against [Trustee Dudoit].

Trustee Dudoit filed a notice of appeal on May 12, 2006. The Cliftons did not file an answering brief.

## DISCUSSION

### I.

The circuit court is authorized to decide complaints alleging trespass of and seeking ejectment from land court property. *Honolulu Memorial Park, Inc. v. City and County of Honolulu,* 50 Haw. 189, 436 P.2d 207 (1967).

### II.

The circuit court properly treated the Motion to Dismiss as a motion for summary judgment because the parties presented, and the court considered, matters that were outside the pleading in question. *Stevens v. Kirkpatrick,* 82 Hawai'i 91, 93, 919 P.2d 1003, 1005 (1996) (internal citations and footnote omitted).

### III.

Trustee Dudoit complained about moss rock walls, tile walls, and a deck. In the record, the deck was also labeled as a patio.

Although the March 17, 2006 order did not expressly speak about the deck/patio, it is clear that the deck/patio is either on the moss rock walls or was on and removed with the tile walls.

## IV.

Trustee Dudoit is correct that the court erred when it failed to acknowledge that "Larry Debebar issued a corrected deposition stating the he did not tell [Trustee] Dudoit" that the wall was a common wall.

## V.

The record does not support Trustee Dudoit's assertion that even if there was an agreement for a common wall between the predecessor owners, "[i]t is clearly a disputed fact whether or not the moss rock wall . . . was meant to include all of the seven encroachments" identified by the survey.

## VI.

In summary, the undisputed relevant facts are as follows: Owner A and Owner B owned adjoining land court real properties. Owner A and Owner B orally agreed to the construction of rock walls and tile walls partially on Owner A's real property and partially on Owner B's real property. This oral agreement between Owner A and Owner B was not recorded on the transfer certificates of title for either of the adjoining real properties. In violation of the City and County of Honolulu's ordinances and height and set back restrictions and without a building permit, Owner A constructed or caused the construction of the walls. Owner B paid only a small sum of money to Owner A for the cost of that construction. Many years ago, Own-er B sold his real property to Owner B2 and did not inform Owner B2 that the walls were common walls partially on Owner A's real property and partially on Owner B's real property. Recently, Owner A sold his real property to Owner A2. Thereafter, Owner B2 sued Owner A2 alleging that the part of the walls on Owner B2's property is an encroachment and trespass by Owner A2 and praying for: (1) an order requiring Owner A2 to remove the part of the walls and structures that are on Owner B2's real property; (2) an order requiring Owner A2 to obtain any and all necessary permits and to comply with all applicable laws and ordinances relating to the maintenance and construction of the walls; (3) an order requiring Owner A2 to remove all encroachments from Owner B2's real property; (4) an injunction prohibiting Owner A2 from continuing to maintain the alleged trespass and nuisance on Owner B2's real property; (5) an award of general and punitive damages; and (6) an award of attorney fees and costs.

■ Are the parts of the walls on Owner B2's real property an encroachment and trespass by Owner A2 onto B2's real property? The answer is no. The parts of the walls on Owner B2's real property are owned by Owner B2, not Owner A2. Therefore, Owner B2 cannot force Owner A2 to remove the parts of the walls that are on Owner B2's real property. The question whether Owner B2 is authorized to remove the parts of the walls on Owner B2's real property and the question of what rights and liabilities Owner A2 and Owner B2 have with respect to the parts of the walls on their respective properties are not questions presented or presentable in this case. In light of Hawaii Revised Statutes Chapter 501 (1993),[3] these questions

---

**3.** Hawaii Revised Statutes (HRS) § 501–1 (1993 and Supp.2005) states, in part:

**Court; jurisdiction; proceedings; location; rules, practice, etc.** A court is established, called the land court, which shall have exclusive original jurisdiction of all applications for the registration of title to land and easements or rights in land held and possessed in fee simple within the State, with power to hear and determine all questions arising upon such applications, and also have jurisdiction over such other questions as may come before it under this chapter, subject to the rights of appeal under this chapter.

HRS § 501–196 (Supp.2005) states:

**Alterations upon registration book prohibited when; court hearings; limitations.** No erasure, alteration, or amendment shall be made upon the registration book after the entry of a certificate of title or of a memorandum thereon, and the approval of the same by the registrar or an assistant registrar except by order of the court recorded with the assistant registrar, provided that the registrar or assistant registrar may correct any clerical error

must be presented to and answered by the land court.

## CONCLUSION

Accordingly, we affirm the "Final Judgment Pursuant to HRCP Rule 58" filed on April 28, 2006.

made by personnel of the registrar's or assistant registrar's office. Any registered owner or other person in interest may at any time apply by petition to the court, upon the ground that registered interests of any description, whether vested, contingent, expectant, or inchoate have terminated and ceased; or that new interests have arisen or been created which do not appear upon the certificate; or that any error, omission, or mistake was made in entering a certificate or any memorandum thereon; ... or upon any other reasonable ground. The court shall have jurisdiction to hear and determine the petition after notice to all parties in interest and may order the entry of a new certificate, the entry or cancellation of a memorandum upon a certificate, or grant any other relief upon such terms and conditions, requiring security if necessary, as it may deem proper. This section shall not be construed to give the court authority to open the original decree of registration, and nothing shall be done or ordered by the court which impairs the title or other interest of a purchaser holding a certificate for value and in good faith, or the purchaser's heirs or assigns, without the purchaser's or their written consent.

Any petition filed under this section and all petitions and motions filed under this chapter after original registration shall be filed and entitled in the original case in which the decree of registration was entered.